UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DEON WALKER,

     Petitioner,

v.

WILLIE SMITH, *Warden*,

     Respondent.

Case No. 13-13976
Honorable Laurie J. Michelson

---

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Robert Deon Walker is currently confined in a Michigan state correctional facility following his conviction for, among other charges, first-degree murder. Walker filed a petition for a writ of habeas corpus *pro se*, arguing that he was deprived of several constitutional rights during his jury trial. Having reviewed the Petition, the warden's response, and the state-court record, the Court concludes that Walker's claims are without merit. Accordingly, the Petition will be denied.

## I. BACKGROUND

Walker was convicted of first-degree premeditated murder, along with several firearms-related charges, in the January 2010 shooting death of Glenn Coleman.

At trial, Coleman's cousin D'Quayvion Hamilton testified that about a week before the shooting, Coleman and Walker's sister were involved in an altercation at a party. (R. 9-6, PID 526.) Walker's sister patted Coleman down in an attempt to find an item on his person. (*Id.*) Shortly after this, Coleman, along with Hamilton and Jovan McKinney, left the party and began to drive away in McKinney's girlfriend's car. (*Id.*) But Walker's sister, who was drunk at the

time, followed them out, jumped on the hood of the car and banged on the hood and windshield. (R. 9-6, PID 527.) Coleman, who was driving, continued to back out of the parking spot, causing Walker's sister to fall off the car. (*Id*.)

At some point afterward, Walker went to Coleman's house in Saginaw looking for him. (R. 9-6, PID 497.) McKinney witnessed this interaction and testified about what happened at a preliminary hearing. Because McKinney was deemed unavailable to testify at trial, the transcript of that hearing was read into the record. (*Id*.) According to McKinney, he was eating pizza with Coleman when Walker and Demetrick Mounger, who was renting a room in the house, arrived. (R. 9-6, PID 498.) Walker was angry because he thought that Coleman had his sister's phone. (R. 9-6, PID 498.) Standing about eight feet away, Walker drew a gun and told Coleman to empty his pockets. (*Id*.) Coleman complied and stated that he did not have the phone. (R. 9-6, PID 499.) But Walker shot at Coleman, who immediately fell to the ground. (*Id.*) McKinney stated that Coleman never got up from the ground after being shot. (*Id*.) Walker told McKinney, "I better not hear about this," and left. (*Id*.)

Demetrick Mounger, who was available to testify at trial, stated that he knew Coleman, McKinney, and Walker, and had been renting a room in Coleman's house at the time of the shooting. (R. 9-6, PID 509.) Mounger testified that he brought Walker to the house that day because Walker wanted some marijuana. (R. 9-6, PID 510.) Mounger said he initially told Walker to wait in the car, and upon walking into the house, saw Coleman, McKinney, and a man known as "Big Baby." (R. 9-6, PID 510.) Mounger said he walked into the kitchen to retrieve the marijuana he had stored there and heard someone coming through the door. (R. 9-6, PID 511.) Though Big Baby was blocking his view, Mounger overheard Walker accuse Coleman of robbing his sister. (*Id*.) Mounger attempted to calm the situation down, but Walker pulled out a

pistol and started shooting at Coleman's chest. (*Id.*) According to Mounger, after Coleman fell, Big Baby ran toward the basement stairs, and Walker fired in his direction as well. (R. 9-6, PID 512.)

On March 16, 2011, the jury convicted Walker of first-degree murder, Michigan Compiled Laws § 750.316(1)(a); carrying a concealed weapon, Michigan Compiled Laws § 750.227; discharge of firearm in a building, Michigan Compiled Laws § 750.234b; and two counts of felony firearm, Michigan Compiled Laws § 750.227b. (R. 9-8, PID 611.) The Michigan Court of Appeals affirmed the convictions in an unpublished opinion. *People v. Walker*, No. 304113, 2012 WL 1605620 (May 8, 2012). The Michigan Supreme Court denied leave to appeal, stating that it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Walker*, 821 N.W. 2d 669 (Mich. 2012) (table). Walker filed his Petition on September 17, 2013. (R. 1.) He seeks relief based on alleged violations of his Fifth and Sixth Amendment trial rights, as well as his trial counsel's alleged ineffective assistance. (R. 1.)

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). However, "[t]he language of 28 U.S.C. § 2254(d) makes it clear that this provision applies only when a federal claim was 'adjudicated on the merits in State court.'" *Davis v. Rapelje*, 33 F. Supp. 3d 849, 856 (E.D. Mich. 2014) (quoting *Johnson v. Williams*, — U.S. —, —, 133 S. Ct. 1088, 1097, 185 L. Ed. 2d 105 (2013)); *see also Brooks v. Bagley*, 513 F.3d 618, 624 (6th Cir. 2008) ("We say [AEDPA] 'potentially' [applies] because AEDPA

3

deference applies only 'with respect to any claim that was *adjudicated on the merits* in State court proceedings.'" (quoting 28 U.S.C. § 2254(d)) (emphasis in original)). Therefore, the standard of review this Court applies to each of Walker's claims depends on whether the claim was "adjudicated on the merits in state court[.]" *Id.*

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

If a claim has been decided on the merits, the Court applies AEDPA deference and will not grant relief unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"When a state court does not address a claim on the merits, as when it applies a state law procedural bar, 'AEDPA deference' does not apply and [the Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014) (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1391, 179 L. Ed. 2d 557 (2011); *Robinson v. Howes*, 663 F.3d 819, 822–23 (6th Cir. 2011)).

## III. ANALYSIS

The state court of appeals' determinations that some of Walker's claims were not errors by the trial court, that other claims constituted harmless error, and that Walker's counsel was not ineffective, were not unreasonable applications of the corresponding constitutional law. Therefore, the Court will deny Walker's Petition.

### A. Sixth Amendment Confrontation

The Sixth Amendment to the United States Constitution provides, "[I]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 61 (2004), the Supreme Court held that the Confrontation Clause bars the admission of out-of-court testimonial statements made by an unavailable witness and offered for their truth if the defendant did not have an opportunity to cross-examine that witness. Violations of the Confrontation Clause are subject to harmless-error review. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Walker says that his Sixth Amendment confrontation rights were violated at trial when McKinney's testimony (from the preliminary exam) was read into the record and when the report of a non-testifying DNA expert was introduced into evidence. Because these claims implicate different aspects of the Confrontation Clause analysis, the Court addresses them separately.

### 1. McKinney's Testimony

Because the Michigan Court of Appeals addressed Walker's claim regarding McKinney's availability on the merits, AEDPA deference applies.

When the prosecution seeks to introduce prior testimony that is subject to *Crawford*'s limitations, a showing must be made that the witness is unavailable. A showing of unavailability involves two parts: "First, the exception mandates that the witness's testimony was given at

previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. Second, a witness cannot be deemed unavailable for purposes of the exception unless the government has made a "good faith effort to obtain [his] presence at the trial proceedings." *Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007). "A good-faith effort, however, is not an ends-of-the-earth effort, and the lengths to which the prosecution must go to obtain a witness generally amount to a question of reasonableness." *Pillette v. Berghuis*, 408 F. App'x 873, 881 (6th Cir. 2010).

The Michigan Court of Appeals' opinion cited Michigan case law regarding unavailability; however, it is clear that the court understood Walker's claim to be for a violation of the federal Constitution's Confrontation Clause as well. *Walker*, 2012 WL 1605620, at *1 (stating that "[b]oth the United States and Michigan Constitutions provide an accused with the right to be confronted with the witnesses against him."). Accordingly, the Court of Appeals addressed Walker's Confrontation Clause claim "on the merits," and so this Court reviews that appellate court's rejection of the claim for reasonableness. 28 U.S.C. § 2554(d).

The Court of Appeals addressed the claim, in relevant part, as follows:

It is clear from the record that the trial court correctly concluded that plaintiff exercised due diligence in trying to obtain the trial testimony of McKinney. Fink's efforts prior to trial were thorough and he followed up on the leads he had been provided. During trial, Gerow's efforts resulted in his contacting McKinney, and then Fink followed up on the lead. A bench warrant was issued, but McKinney was not found. The efforts extended by the police to produce McKinney satisfy any test of due diligence.

*Walker*, 2012 WL 1605620, at *1. There is nothing unreasonable about this finding that the state made a good-faith effort to locate McKinney.

Prior to jury selection, the trial court heard testimony from Saginaw Police Detective Timothy Fink, who stated that while McKinney had testified at Walker's preliminary

6

examination without any issues, a subpoena issued for his trial testimony came back as undeliverable because McKinney had apparently moved. (R. 9-4, PID 406.) Fink visited three addresses associated with McKinney: the address listed on the subpoena, McKinney's aunt's house, and another address connected to McKinney. (R. 9-4, PID 407.) He also checked the VINELink website, which "shows people who may be in jail," and checked with the Department of Human Services. (*Id*.) Human Services had sent McKinney an unemployment check months prior to the trial, but he had since "f[allen] off the radar." (*Id*.) A resident at McKinney's last-known address (the subpoena address) stated that the apartment had been vacant for "a while." (R. 9-4, PID 408.) Fink learned from McKinney's aunt that McKinney had possibly moved out of state with his mother. (*Id*.) Fink called McKinney's mother's Ohio telephone number numerous times with no response, and McKinney's last known cell phone number was now registered to a different person. (R. 9-4, PID 409.) The Post Office did not have a forwarding address for McKinney. (*Id*.) Fink continued to search for McKinney up until the trial began, as did Saginaw Police Detective Matthew Gerow.

Gerow was able to talk to McKinney's mother the day before trial, and she told him she would tell McKinney to call that afternoon. (R. 9-5, PID 448.) However, McKinney never called. (*Id*.) On the day of trial, a courtroom observer approached Gerow and told him that she had McKinney's cell phone number. (*Id*.) The woman called the number, and "JoJo" (a known nickname of McKinney's) answered. (*Id*.) Gerow identified himself and told McKinney that he needed to know whether McKinney was coming to court. (*Id*.) McKinney hung up. (*Id*. R. 9-5, PID 448.) However, McKinney later called back and explained that he was "in fear for his family as well as his baby's mother's house had been shot up because of this incident." (*Id*.)

The trial court issued a bench warrant for McKinney's arrest and instructed the officers to keep searching for him; however, McKinney was not found. (R. 9-5, PID 449.)

The Michigan Court of Appeals, citing all of this testimony, found that the state exercised "due diligence" in searching for McKinney. *Walker*, 2012 WL 1605620, at *2. Walker says that more should have been done to "discover the location of the[] numbers" detectives had for McKinney and his mother. (R. 1, PID 7.) But the Court finds that given the efforts to locate McKinney over the course of a week (including visits to multiple addresses, inquiries to multiple state agencies, and phone calls to McKinney's family and friends), which continued into trial, the Michigan Court of Appeals' determination of due diligence was a reasonable application of the good-faith standard. *See Winn v. Renico*, 175 F. App'x 728, 737 (6th Cir. 2006) (holding that similar evidence adduced at a Michigan due diligence hearing established good faith).

Moreover, while Walker's Petition is focused on the good-faith prong, the Court also notes that McKinney's preliminary-examination testimony was given at a prior proceeding against Walker, during which Walker was present and McKinney was subjected to cross examination by Walker's counsel. *California v. Green*, 399 U.S. 149, 165–66 (1970).

Walker is not entitled to habeas relief for his claim regarding McKinney's preliminary examination testimony.

### 2. DNA Report

Walker next disputes the admission, through Gerow's testimony, of the contents of a DNA lab report prepared by a nontestifying expert. The Michigan Court of Appeals applied a procedural bar to this claim; however, Respondent argues procedural default rather than the merits of the claim.

8

At trial, Gerow testified that the "Michigan State Police Crime lab" had tested DNA samples that were taken from objects found around the house, including a cigarette and a beer can, against samples from Coleman, McKinney, and Mounger. (R. 9-7, PID 570.) This was done to verify that McKinney and Mounger had been at the house. (R. 9-7, PID 571.) However, there was no indication that the "shooter" had left any DNA at the scene and it did not appear that Walker's DNA was ever collected for testing. (*Id.*) Walker's counsel did not object during Gerow's testimony regarding the DNA evidence, even though there was no indication that Gerow himself prepared the report.

Respondent contends that this claim was procedurally defaulted because of Walker's counsel's failure to object. Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). There is an exception, however, where a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Courts in the Sixth Circuit apply a four-factor test to determine whether a claim has been procedurally defaulted:

> First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. Second, the court must decide whether the state courts actually enforced its procedural sanction. Third, the court must decide whether the state's procedural forfeiture is an 'adequate and independent' ground on which the state can rely to foreclose review of a federal constitutional claim. 'This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims.' And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433

U.S. 72 (1977), that there was 'cause' for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Henderson v. Palmer*, 730 F.3d 554, 559 (6th Cir. 2013) (quoting *Greer v. Mitchell*, 264 F.3d 663, 672–73 (6th Cir.2001)).

The first element of procedural default is satisfied. In Michigan, defendants in criminal cases are required to preserve their claims for appeal by making an objection in the trial court. *People v. Carines*, 597 N.W.2d 130, 137–39 (Mich. 1999); *People v. Grant*, 520 N.W.2d 123, 128 (Mich. 1994). There was no objection to Gerow's testimony.

The second element of procedural default also is satisfied. A state appellate court's review for "plain error" constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)). "In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts and presume that later courts enforced the bar instead of rejecting the defaulted claim on its merits." *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). The Michigan Court of Appeals reviewed Walker's claim for plain error due to his "failure to object to the testimony below[.]" *Walker*, 2012 WL 1605620, at *2.

The third element of procedural default is also satisfied. Here, the Court must determine whether the procedural rule was an adequate and independent state ground for denying review of a federal constitutional claim. "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review." *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)). "[T]he procedural rule requiring objection below to preserve an issue on appeal is both firmly established and regularly followed by Michigan state courts[.]" *Morgan v. Lafler*, 452 F. App'x 637, 647 (6th Cir. 2011) (citing

10

*Carines*, 597 N.W.2d at 138–39). Here, the state court did rely on the rule to foreclose relief. *Walker*, 2012 WL 1605620, at *2–3.

To summarize, Walker failed to follow a relevant state procedural rule, the last state court to review his claim in a reasoned opinion enforced the rule, and the rule was an adequate and independent state ground for precluding review of Walker's claim. Therefore, federal habeas review of Walker's claim is barred unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider [his] claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Walker has not presented cause for the default. In his Petition, he notes that the testimony was allowed "with no objection from counsel." (R. 1 at PID 11.) It is true that ineffective assistance of counsel can constitute cause for a procedural default; however, the doctrine of exhaustion of state remedies "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986). And Walker did not claim that his counsel was ineffective for failing to object to the DNA results in state court. Accordingly, the Court concludes that Petitioner has failed to established "cause" for his procedural default. As a result, the Court need not determine whether Petitioner has established resulting prejudice. *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir. 2010).

In addition, even if the Court were to find that Walker had not procedurally defaulted the claim, it would not grant habeas corpus relief because the admission of the DNA test results was harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In determining whether a Confrontation Clause violation was harmless under *Brecht*, the Court should consider "(1) the

11

importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009) (citing *Van Arsdall*, 475 U.S. at 684).

Applying these factors, the testimony was helpful to the prosecution in that it confirmed that both Mounger and McKinney had been inside Coleman's house at some point in time. But both Mounger and McKinney testified that they were present in the house at the time of the shooting, so that fact was already in evidence. Indeed, there was no dispute at trial over Mounger and McKinney's presence at the house. Further, Walker's counsel in his closing argument used the DNA results involving Mounger and McKinney to Walker's *advantage*: he suggested that those two men were responsible for Coleman's death. (R. 9-8, PID 599.) Finally, Walker's counsel had a full opportunity to cross-examine Gerow on the subject of the DNA tests. Thus, the Court finds that any Confrontation Clause violation was harmless.

## B. Irrelevant Evidence

Walker next argues that the trial court erred when it admitted evidence of his tattoos as relevant to show his state of mind or intent. The Michigan Court of Appeals addressed this issue under state evidentiary law.

During trial, the prosecution sought to admit a photograph of Walker's arms on the day he was arrested in connection with Coleman's death. (R. 9-7, PID 572.) Walker objected on relevance grounds. (*Id*.) The prosecution argued that the tattoos showed "state of mind" and "intent." (*Id*.) The trial court overruled the objection. (*Id*.) The photograph depicted three tattoos

on Walker's right forearm: "survival of the fittest," "kill or be killed," the initials "FB," and "feel my pain" with a razor blade and blood droplets. (*Id.*)

Although Walker raised this issue before the Michigan Court of Appeals, he did not raise it as a federal constitutional issue. (R. 9-11, PID 683–85.) A federal habeas petitioner must first exhaust all available remedies in state court. 28 U.S.C. § 2254(b). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Id.* That is, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996); *Onifer v. Tyszkiewicz*, 255 F.3d 313, 315 (6th Cir. 2001). "Such a requirement affords state courts an opportunity to consider and correct any violation of federal law, thus expressing respect for our dual judicial system while also furnishing a complete record of a petitioner's federal claim as litigated in the state system." *Hafley v. Sowders*, 902 F.2d 480, 482 (6th Cir. 1990).

The Court agrees with Respondent that Walker failed to raise the tattoo evidence claim as a federal constitutional issue. Walker's brief on appeal cited only the Michigan Rules of Evidence and Michigan case law interpreting those rules. (R. 9-11, PID 684.) The Michigan Court of Appeals opinion also analyzed the claim as a state evidentiary issue, rather than a constitutional due process issue. *Walker*, 2012 WL 1605620, at *2.

Walker's unexhausted claim also fails on the merits. *See Cain v. Redman*, 947 F.3d 817, 820 (6th Cir. 1991) (providing that federal habeas courts may address merits of unexhausted claims). Errors in the application of state law, especially rulings regarding the admissibility of

evidence, will not usually be a basis for federal habeas relief. *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000). "Such rulings 'cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Blackshere v. MacLaren*, No. 15-1904, — F.3d —, 2016 U.S. App. LEXIS 2861, at *5 (6th Cir. Feb. 9, 2016) (marks in original, citation omitted).

The trial court's ruling, though found to be in error by the Michigan Court of Appeals, was not such a ruling. There was no showing that the evidence of Walker's tattoos played any significant role in the jury's determination that Walker killed Coleman, not least because it was unclear from the record how Walker's tattoos demonstrated his state of mind in the days leading up to Coleman's death. As such, the Court does not find that the admission, especially in view of all of the other evidence implicating Walker, deprived Walker of the fundamentally fair trial that the Due Process Clause guarantees.

## C. Prosecutorial Misconduct

Walker next claims that the prosecutor committed misconduct by calling D'Quayvion Hamilton to testify and shifting the burden of proof to the defense in closing argument. Respondent argues that both of these claims have been procedurally defaulted—the analysis for which includes the four factors the Court discussed above.

### 1. Hamilton's Testimony

Walker says that the prosecutor committed misconduct when he "attempted to commit a fraud upon the court" by calling Hamilton to testify. The prosecutor sought Hamilton's testimony in order to establish motive—that "the defendant was upset with the victim over the alleged theft of the cell phone of his sister." (R. 9-6, PID 525.) Walker's counsel objected on the grounds that "[w]hat occurred a few days before between different parties is irrelevant." (*Id*.) It appears that

14

Walker believes that Hamilton testified beyond the limited purpose announced by the prosecutor. The Michigan Court of Appeals rejected this argument on appeal because "[t]he foundation for defendant's argument is lacking, as the prosecutor told the court what he had represented would be the extent of the testimony. He did not tell the Court that Hamilton had not made any other statements regarding the incident." *Walker*, 2012 WL 1605620, at *6 n.3.

The Court finds that the state court's determination was not an unreasonable application of federal law. When a petitioner claims that prosecutorial misconduct has resulted in a fundamentally unfair trial "the due process question is whether the misconduct constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Martin v. Foltz*, 773 F.2d 711, 716 (6th Cir. 1985) (citation and internal quotation marks omitted). There is no evidence that the prosecutor committed fraud by calling Hamilton to testify. The prosecutor represented that Hamilton, as an eye-witness, would testify to the altercation between Coleman and Walker's sister without "get[ting] into what the sister said [because] [t]hat would be considered hearsay," and that is exactly what Hamilton did. (R. 9-6, PID 525.) Moreover, any representation by the prosecutor as to how Hamilton was going to testify was done without the jury or Hamilton present. (*Id.*) Accordingly, Walker is not entitled to habeas relief on this claim.

### 2.  Closing Argument

During closing argument, the prosecution attempted to discredit Walker's defense: "Defense . . . intimates that . . . maybe it was Mr. Mounger, Mr. McKinney, who executed the victim . . . and now they're making Defendant here the fall guy. First of all, has there been any evidence of any animosity between either Mr. Mounger or Mr. McKinney and the victim, Glenn Coleman?" (R. 9-8, PID 604.) And later, "has there been any evidence of animosity between Mr. McKinney and the defendant?" or "any evidence at all that people on the street were saying Mr.

Mounger committed this crime?" (R. 9-8, PID 604–05.) Walker's counsel did not object, but Walker did raise the issue of misconduct on appeal. *Walker*, 2012 WL 1605620, at *3. The Michigan Court of Appeals reviewed for plain error. *Id.* (citing *People v. Carines*, 597 N.W.2d 130 (Mich. 1999).

Michigan law requires that a criminal defendant object to prosecutorial misconduct in order to preserve such a claim for appellate review. *People v. Ullah*, 550 N.W. 2d 568 (Mich. Ct. App. 1996); *see also People v. Stanaway*, 521 N.W. 2d 557 (Mich. 1994). The Michigan Court of Appeals enforced this rule by reviewing for plain error. Walker has not shown cause for the failure to object. Where cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *Smith v.* Murray, 477 U.S. 527, 533 (1986). The Court finds that the claim regarding the prosecutor's statements in closing arguments has been procedurally defaulted.

### D.  Ineffective Assistance of Counsel

Walker argues that his counsel's performance was constitutionally ineffective in several respects. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court set forth a two-prong test to determine whether a habeas petitioner has received ineffective assistance of counsel. First, the petitioner must prove that counsel's performance was constitutionally deficient, meaning that counsel made errors so serious that he or she was not "functioning as the 'counsel' guaranteed the criminal defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must establish that counsel's "deficient performance prejudiced the defense[.]" *Id.*

To succeed on the performance prong, Walker must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The reviewing

court must "indulge a strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689–90. Walker bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689. In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011).

To satisfy the prejudice prong, Walker must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id*.

### 1.  Failure to Call Witnesses

Walker says that trial counsel was aware of, yet failed to call or investigate, four witnesses who would have testified favorably for the defense. The Michigan Court of Appeals addressed this claim on the merits. *Harrington*, 131 S.Ct. at 788 ("The standards created by *Strickland* and [§] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal citation omitted)).

As to two of the witnesses that counsel should have investigated or called, Rosevalt and Kenya Crayton, the Michigan Court of Appeals found that "there was no record of what defendant's trial counsel knew about these potential witness[es] or how he responded if he knew. In other words, defendant's claim depends on facts not of record." *Walker*, 2012 WL 1605620, at *5. The Court of Appeals further found that "defendant's self-serving representations of what the

two witnesses would have testified to" were "not sufficient to overcome the presumption that counsel rendered effective assistance." *Id.*

The Court does not find these conclusions by the Michigan Court of Appeals to be unreasonable—there is nothing to indicate that counsel had reason to think that these two witnesses would have had information favorable to Walker such that reasonable counsel would have sought to interview them. *See* 28 U.S.C. § 2254(d)(1).

As to the other two proposed witnesses, Robert Witherspoon and Glenn Tamel, neither were present at the shooting. Therefore, the Michigan Court of Appeals found that "there was no evidence what would have prompted defense counsel to investigate further. The two eyewitnesses did not place the man at the scene of the shooting or indicate that the men were involved in the shooting, and defendant does not assert that the men knew anything related to the shooting." *Walker*, 2012 WL 1605620, at *6. This was reasonable: "defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004); *see also Morgan v. Bunnell*, 24 F.3d 49, 53 (9th Cir. 1994).

For these reasons, § 2254(d) bars habeas corpus relief on this claim of trial counsel's ineffectiveness.

### 2. Failure to Investigate Testifying Witnesses

Walker also says that trial counsel was ineffective for failing to investigate the testifying witness' motivations to testify. Walker says that he had previously been involved in an altercation with Mounger where he shot Mounger in the leg, and McKinney's uncle and Walker's uncle had been in prison together and had animosity between them.

18

Walker raised this claim on appeal, but the Michigan Court of Appeals rejected it on the merits: "Again, there was no evidence to indicate what defendant's trial counsel knew of any such evidence . . . . Moreover, it is plausible that trial counsel would not want evidence admitted that defendant shot someone or that he stole money from an imprisoned person." *Walker*, 2012 WL 1605620, at *5. *Harrington*, 131 S.Ct. at 788.

This was a reasonable application of *Strickland*. Under *Strickland*, a reviewing court must "not simply . . . 'give [the] attorney[] the benefit of the doubt,' but . . . affirmatively entertain the range of possible 'reasons [Walker's] counsel may have had for proceeding as they did.'" *Cullen*, 131 S. Ct. at 1407 (citation omitted). Here, trial counsel could have reasonably determined that eliciting the reasons that Mounger and McKinney had to testify against Walker would have done more harm to the jury's perception of Walker than to Mounger and McKinney's credibility. This is especially so where counsel was able to elicit on cross-examination other reasons to doubt these witness' accounts of what happened. Counsel drew out that McKinney had potentially been distracted at the time of the shooting and told the 911 operator that he did not know who had done the shooting. (R. 9-6, PID 504.) And Mounger admitted on cross-examination that in his first statement to police, he denied being at the house at the time of the shooting, instead telling them that he had gone to the Cadillac Club. (R. 9-6, PID 515.)

For these reasons, the Michigan Court of Appeals reasonably applied *Strickland* in rejecting this claim of trial counsel's ineffectiveness. *See* 28 U.S.C. § 2554(d)(1).

### 3.  Failure to Request Curative Instruction

On Mounger's redirect examination, the prosecutor asked, "Have you been assaulted since you gave these statements [about the shooting] to the police?" (R. 9-6, PID 524.) Walker's counsel objected to the line of questioning and the trial court sustained the objection: "We are

not going into that. . . . Unless you can directly tie it to the defendant. Otherwise we are not going into it." (R. 9-6, PID 524.) The Michigan Court of Appeals rejected Walker's assertion that the questions left the jury with the impression that he or his family had threatened witnesses: "There was no evidence admitted that [Mounger] had been threatened. Further, the court instructed the jury that the attorneys' questions and comments were not considered as evidence." *Walker*, 2012 WL 1605620, at *6.

This finding was reasonable under § 2254(d)(1) given that the trial court instructed, "When you discuss this case and decide on your verdict, you may only consider the evidence that has been properly admitted in this case. . . . The lawyers' statements and arguments are not evidence." (R. 9-8, PID 605–06.) A jury is presumed to follow its instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Further, the trial court's statement was that the questioning had to stop unless it could be tied to Walker; in other words, the judge's implication was that any assault Mounger had experienced was *not* linked to Walker.

Walker is not entitled to habeas relief on this claim.

### 4.  Failure to Object to DNA Report

As noted above, it appears from the Petition that Walker may be attempting to raise an ineffective-assistance of counsel claim based on trial counsel's failure to object to Gerow's testimony regarding the contents of the DNA report. But Walker did not raise this claim before the Michigan Court of Appeals. However, as explained earlier, Walker cannot establish prejudice stemming from the failure to object because the DNA evidence was ultimately helpful to his case, as his counsel used it to suggest that McKinney and Mounger were the ones involved in the shooting rather than Walker. Walker is not entitled to habeas relief on this claim.

### E. Voluntary Manslaughter Instruction

Lastly, Walker says that the trial court erred by declining to give a voluntary manslaughter instruction. The Michigan Court of Appeals rejected this claim as follows:

> [T]he evidence indicated that the incident between defendant's sister and Coleman occurred the week prior to the shooting, providing time for defendant to control his passions. Additionally, the evidence showed that during the confrontation with defendant just before Coleman was shot, defendant was pointing a gun at Coleman while Coleman was panicked, walking around the room, and searching his pockets. The evidence indicated that defendant was directing Coleman, asking him about the phone, telling him to empty his pockets, directing him to lie on the floor. As defendant left the home, defendant instructed McKinney not to report the shooting. The evidence did not support the giving of a voluntary manslaughter instruction to the jury.

*Walker*, 2012 WL 1605620, at * 6–7.

Under Michigan law, a defendant is guilty of voluntary manslaughter if he "killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 413 (6th Cir. 2009) (quoting *People v. Mendoza*, 664 N.W.2d 685, 693 (Mich. 2003)). A rational view of the evidence presented at trial—especially that Walker shot Coleman days after Coleman had an altercation with Walker's sister—did not strongly support an instruction for voluntary manslaughter.

Moreover, the Supreme Court has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case. *See McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014) ("This Court has never held that the Due Process Clause does not require a lesser-included offense instruction in a non-capital case; we have merely recognized that failure to deliver such an instruction in a non-capital case does not give rise to a claim that is 'cognizable in federal habeas corpus review.' The lead opinion's statement that 'defendants do not have a constitutional right to a lesser-included-offense instruction in non-

21

capital cases,' must be understood in the context—and within the confines—of the habeas case before this Court. (Clay, J., concurring) (citation omitted)). Here, Walker was not facing a capital conviction: in Michigan, first-degree murder carries a sentence of life imprisonment without parole.

As such, the failure to give the instruction did not violate any federal law that has been clearly established by the Supreme Court. § 2254(d)(1).

## IV. CONCLUSION

For the reasons set forth above, the Court will not grant Walker the relief requested in his Petition. The Court also believes that no reasonable jurist would argue that Walker's claims have merit, so a certificate of appealability will not issue from this Court. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). But if Walker nonetheless chooses to appeal, he may proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3).

Accordingly, IT IS ORDERED the Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED.

It is further ORDERED that a Certificate of Appealability is DENIED.

It is further ORDERED that Walker may proceed *in forma pauperis* on appeal.

**SO ORDERED.**

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: September 20, 2016                U.S. DISTRICT JUDGE

22

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 20, 2016.

s/Keisha Jackson
KEISHA JACKSON
Case Manager